IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 11, 2006

## STATE OF TENNESSEE v. MARTY MITCHELL CLARK

**Direct Appeal from the Circuit Court for Madison County**
**No. 04-536     Donald H. Allen, Judge**

---

**No. W2005-01540-CCA-R3-CD  - Filed May 5, 2006**

---

The defendant, Marty Mitchell Clark, was convicted by a Madison County jury of aggravated burglary, a Class C felony, attempted aggravated burglary, a Class D felony, theft of property under $500, and vandalism under $500, both Class A misdemeanors.  He was sentenced as a Range II, multiple offender to ten and eight years, respectively, for the felony counts and eleven months and twenty-nine days for each misdemeanor, with all sentences to be served concurrently for a total effective sentence of ten years in the Department of Correction.  On appeal, he argues the evidence was insufficient to support his convictions.  Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

George Morton Googe, District Public Defender, and Gregory D. Gookin, Assistant Public Defender, for the appellant, Marty Mitchell Clark.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# FACTS

The defendant's convictions stem from his involvement in the burglary and attempted burglary of a duplex house located at 243 Campbell Street[1] in Jackson, Tennessee. Mary Baker testified that on June 9, 2004, at approximately 7:50 a.m., she was leaving her residence at 242 Campbell Street to go to work when she "heard glass breaking." Baker looked at the residence across the street and saw "somebody moving around on the porch." She immediately went to her car and called 9-1-1. Baker described the person on the porch as "a black male" but acknowledged that, because she did not "concentrate on [his] facial features," she could not identify him. Baker watched as the man moved "from a window on the right-hand side of the porch to the door and back to the window and back and forth, and [she] could see that he was trying to raise the window." Because the window had been painted shut, the man could not raise it. She said the man then sat down on the porch steps for "maybe forty-five seconds, a minute" before getting back up and trying to open the window again. When he could not gain entry into the residence, the man "picked up [some] little bags and came down off the porch, down the walk, [and] started walking away." Baker said the police "arrived as [the man] was right in front of the book store that was next to the house he was trying to break in." She also said that the man "never got out of [her] sight from the time [she] saw him until the police arrived" and detained him.

Officer Rodney Anderson of the Jackson Police Department testified that on the day in question, he and his partner, Ted Maxwell, "received a call from dispatch that [they] had a burglary in progress" at 243 Campbell Street. Upon arriving at the location, the officers "observed [the defendant] coming off, like, a pathway in front of the porch on 243 Campbell, walking towards the . . . business right beside it." The defendant was carrying a duffel bag containing "a DVD/VCR player, several pairs of jeans and a shirt and some shoes, some hats and a visor and several other items." The defendant said that all of the items in the bag belonged to him. After arresting the defendant for burglary, Anderson went to the front residence of the duplex where he "observed the glass broken above the latch on the right side of the window, and then a screen was pried on the left side of the front house." The officer did not "check the back" residence.

Officer Ted Maxwell of the Jackson Police Department testified that in addition to the items in the duffel bag, the defendant also had "some jewelry . . . inside his pants pockets." Maxwell acknowledged that the police found no tools or gloves on the defendant.

Tarsha Webb testified that on June 9, 2004, she lived at 243-B Campbell Street. Webb said that when she arrived at her house at 11:15 a.m. for lunch, she "noticed that the screen on the far left on the window was a little bent, and [she] noticed that the mailbox [at the front entrance] was hanging kind of crooked." Later that afternoon, she discovered that the window on the right "had,

---

[1]The duplex consisted of two residences, with 243-B having an entrance on the front of the house and 243-A having an entrance on the back of the house.

like, a hole right there where he had tapped on there and tried to break in." She said that the hole "was big enough where he was trying to unlock the latch on the window" and that her landlord had to replace the broken window.

Dorothy Murphy testified that on June 9, 2004, she lived at 243-A Campbell Street. Murphy said she had left her house on June 8, 2004, and did not return until 2:30 p.m. on June 9, 2004. Upon her arrival home, Murphy found her front door locked but noticed several things out of place. She then realized that her DVD/VCR player, a bracelet, a gold ankle bracelet, a gold chain with a cross on it, some clothes, and "a blue and red duffel bag" were missing. After reporting the burglary to the police, Murphy was informed that the police had her missing items and "the young man that got them." Murphy subsequently went to the police station, where she recovered her "blue-and-red duffel bag, four pair of blue jeans, a Lane College t-shirt, [and a] blue-and-gray Dallas Cowboy jersey," as well as her DVD/VCR player and her necklace and cross.

Officer Douglas Manaseri of the Jackson Police Department testified that on June 9, 2004, he responded to an aggravated burglary call at Dorothy Murphy's residence. Manaseri said he found "no determinable point of entry. There were several things that pointed to possible points of entry." He explained that he found a window with a "small hole such as what would be where you would break the glass and reach in and flip the window latch," another window that "had a screen pulled out," and, finally, "some scratch marks around the door latch that would indicate someone may have tried to slip the door latch, pop the door open."

Investigator Paul White of the Jackson Police Department testified that the items recovered from the defendant upon his arrest were identified by Dorothy Murphy as the items stolen from her residence.

## ANALYSIS

### Sufficiency of the Evidence

The defendant argues the evidence is insufficient to support his convictions. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Thus, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict

by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A conviction based on circumstantial evidence is permitted in Tennessee. State v. Tharpe, 726 S.W.2d 896, 899 (Tenn. 1987). Whether the conviction is based upon direct or circumstantial evidence, the standard for appellate review is the same. State v. Johnson, 634 S.W.2d 670, 672 (Tenn. Crim. App. 1982). On appeal, the State is entitled to the strongest legitimate view of the trial evidence and all reasonable and legitimate inferences which may be drawn from the evidence. State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000). The weight given to circumstantial evidence is for the jury to determine. Williams v. State, 520 S.W.2d 371, 374 (Tenn. Crim. App. 1974). Circumstantial evidence alone may be sufficient to convict one of a crime, if such evidence sufficiently proves all the necessary elements. Tharpe, 726 S.W.2d at 899-900. In State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002), our supreme court restated the holding of State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993), which in turn quoted State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985), that "[a] conviction may be based entirely on circumstantial evidence where the facts are 'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone.'"

The defendant was convicted of aggravated burglary, attempted aggravated burglary, theft of property under $500, and vandalism under $500. A person is guilty of aggravated burglary when he or she enters a habitation without the owner's consent and with the intent to commit a felony, theft, or assault. Tenn. Code Ann. §§ 39-14-402, -403 (2003).

A person is guilty of attempted aggravated burglary, when "acting with the kind of culpability otherwise required for" aggravated burglary, he or she does any of the following:

> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a) (2003).

Theft of property is defined as: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2003). If the value of the property is $500 or less, the theft is a Class A misdemeanor. Id. § 39-14-105(1).

Vandalism is defined as: "Any person who knowingly causes damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent is guilty of" vandalism. Tenn. Code Ann. § 39-14-408(a) (2003). "'Damage' includes, but is not limited to: (A) [d]estroying, polluting or contaminating property; or (B) [t]ampering with property and causing pecuniary loss or substantial inconvenience to the owner or a third person." Id. § 39-14-408(b). If the value of the property is $500 or less, vandalism is a Class A misdemeanor. Id. §§ 39-14-408(c)(1), -105(1).

The defendant argues because Mary Baker did not see him enter the residence at 243 Campbell, there are "no witnesses who saw [him] go into Ms. Murphy's apartment and take her possessions," and "Officer Manaseri was unable to determine a definite point of entry into Ms. Murphy's apartment," the evidence is insufficient to support his convictions. We disagree. Mary Baker testified that she observed a man, later identified as the defendant, walking around on the porch of 243-B Campbell Street shortly after hearing glass break. In addition, she observed him attempting to raise a window to gain entry into the residence. Tarsha Webb, the occupant of 243-B, testified that her screen was bent and a window had to be replaced. This evidence is more than sufficient to convict the defendant of attempted aggravated burglary and vandalism under $500. As for the aggravated burglary and theft under $500 convictions, the evidence showed that the defendant was found with property just taken from Dorothy Murphy's locked apartment at 243-A Campbell Street. This issue is without merit.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE